Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thelton E. Henderson, Judge

SUSAN FUTTERMAN, MEGAN          )
MORTENSEN, and ACIANITA LUCERO  )
as individuals, individually   )
and on behalf of all others    )
similarly situated,            )
                                )
          Plaintiffs,           )
                                )
  VS.                           )      NO. C-13-5416-TEH
                                )
KAISER FOUNDATION HEALTH PLAN,  )
INC., and DOES I through XX,    )
inclusive,                      )
                                )
          Defendants.           )
_____)

                    San Francisco, California
                    Monday, February 10, 2014

                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    Siegel, Lewitter & Malkani
                    1939 Harrison Street
                    Suite 307
                    Oakland, California  94612
            BY:  **JONATHAN SIEGEL, Esq.**




For Defendants:
                    MANATT PHELPS & PHILLIPS LLP
                    11355 W. Olympic Boulevard
                    Los Angeles, California  90064
            BY:  **JOSEPH E. LASKA, Esq.**

```
Reported By:        Candace Yount, CSR No. 2737, RMR, CCRR
                    Contract Court Reporter
                    United States District Court
                    Northern District of California
```

1  <u>**Monday - February 10, 2014**</u>                           <u>**10:13 a.m.**</u>

2                          P R O C E E D I N G S

3                              ---000---

4      **THE CLERK:**  Okay.  This Court is now in session.

5      Calling civil 13-5416, Futterman versus Kaiser Foundation

6  Health Plan, Inc.

7      Counsel, please state your appearances for the Court.

8      **MR. LASKA:**  Good morning, Your Honor.  Jonathan

9  Siegel, Siegel, LeWitter & Malkani, for the plaintiffs.

10     **THE COURT:**  Okay.

11     **MR. LASKA:**  Good morning, Your Honor.  Joseph Laska

12 from Manatt, Phelps & Phillips on behalf of defendant Kaiser.

13     **THE COURT:**  Okay.  Let's begin.

14     I've read your papers carefully.  I'm familiar with the

15 facts.  Keep that in mind as you proceed.

16     I've given you some questions and I'd like you to answer

17 those either directly or in the course of your presentation.

18     Let's begin with the moving party.

19     **MR. LASKA:**  Your Honor, would you prefer that I

20 address the Court from here or from the podium?

21     **THE COURT:**  I prefer up here, counsel.  And speak into

22 the mic.

23     **MR. LASKA:**  Thank you, Your Honor.

24     I know that you had more questions for the plaintiffs than

25 for -- for the defendants so I'll try to keep my remarks brief

1    and I'll try not to repeat anything that's in our papers.

2         The first question you asked was whether if all four of

3    the plaintiff Mortensen's claims are preempted by ERISA, should

4    they be dismissed with or without prejudice.

5         **THE COURT:**  Um-hmm.

6         **MR. LASKA:**  The answer is, they should be dismissed

7    with prejudice because there's no way that they can be

8    maintained as a matter of law under ERISA.

9         And I don't believe that the plaintiff disputes that fact

10   as to at least the breach of contract and bad faith claims,

11   which they've already offered to dismiss.

12        The question that is still before the Court and which the

13   Court anticipates in its Question Number 2 for plaintiff, is

14   whether the plaintiff has any interest in trying to maintain a

15   plain -- I'm sorry -- a claim under ERISA Section 502(a)(1)(B).

16        **THE COURT:**  Um-hmm.

17        **MR. LASKA:**  If the plaintiffs had an interest in

18   trying to state such a claim, as much as I would love the Court

19   to dismiss Mortensen's -- all of Mortensen's claims with

20   prejudice and without leave to amend, I think that Mortensen

21   could have a chance to state a claim under ERISA.

22        If plaintiff Mortensen has no interest in doing that --

23   and from the papers it does not seem like she does -- then all

24   of Mortensen's claims should be dismissed with prejudice and

25   without leave to amend.

1    And the question then, if the Court agrees, is -- The

2    question for both parties is:  If all four of Mortensen's

3    claims are dismissed, why should this Court retain

4    jurisdiction?

5    I would concede, Your Honor, that if all of Mortensen's

6    claims are dismissed, then the Court no longer has original

7    jurisdiction but the Court has the power to exercise

8    supplemental jurisdiction over the case, even if there were

9    no -- there are no more remaining Federal claims.

10    We cite to the Satey case in our brief in Footnote 6 at

11    Page 8.

12    And it seems that there are factors for the Court to

13    consider, the primary overarching interest being judicial

14    efficiency.

15    I would say, Your Honor, that at this point -- The Court

16    began by saying that you read all of our papers.  I know that

17    they were lengthy.  They included attachments and items that we

18    asked the Court to take judicial notice of.

19    There would certainly be a certain degree of judicial

20    efficiency for this Court to continue adjudicating this matter

21    rather than remanding it to a brand new court.

22          **THE COURT:**  Um-hmm.

23          **MR. LASKA:**  I would also say, Your Honor, that in

24    terms of case management, the Court could continue to retain

25    jurisdiction over the case, and rather than that making a whole

PROCEEDINGS

1    lot of work for the Court, the Court could then stay the

2    remaining case, or even dismiss it, under the doctrines of

3    primary jurisdiction and abstention, which is how we begin our

4    motion and what is, candidly, our primary focus.

5        Your Honor, we are the first to admit that the doctrines

6    of abstention and primary jurisdiction are rarely invoked, or

7    they're invoked cautiously, I should say.  But this case is a

8    prime candidate for these doctrines.

9        All of plaintiffs' claims arise under a set of regulations

10   that was recently passed by the DMHC, and the DMHC is now

11   actively in the process of enforcing these regulations.

12       There is a pending administrative action, which the Court

13   knows from our papers.  I'm -- I'll keep my repetition to a

14   minimum, but there is a pending administrative action.  It is

15   set for trial in May or June.  There may or may not be an

16   appeal after that, but there is a light at the end of the

17   tunnel.

18       And the DMHC, the agency that drafted the regulations and

19   is primarily responsible for enforcing them, is going to be

20   passing on these very questions that are before the Court.

21       The plaintiffs are essentially asking this Court to

22   adjudicate all of those issues concurrently with the DMHC

23   adjudicating under the administrative proceeding.

24       Your Honor, that would be inefficient and it would risk

25   inconsistent judgments against Kaiser.  There's simply no

PROCEEDINGS

1  reason for the Court to be doing it when the Court has the

2  option to abstain.

3      And we would argue that although a stay would certainly be

4  appropriate under the doctrine of primary jurisdiction, the

5  doctrine of abstention also applies, and under abstention, the

6  Court could dismiss all of the claims.

7          **THE COURT:**  Okay.  And, in your best estimate again,

8  how long -- if we were to stay, how long would we have to stay

9  to see what the other agency finds?

10         **MR. LASKA:**  Your Honor, the trial is set -- It's set

11  for four weeks but they're split over May and June of this

12  year.

13     Candidly, I have no idea how long it will take an

14  Administrative Law Judge to issue an opinion.  These are --

15  These are complicated facts.  I don't imagine that we would

16  have an opinion by the end of June.  It may be July; it may be

17  August.

18     It is possible that there will be an appeal.  It is

19  equally as likely that there may be a resolution at some point

20  before then.  So it's difficult to say, Your Honor, but the

21  point is, it's not a -- it's not something set for trial two

22  years out.

23         **THE COURT:**  All right.  Okay.

24         **MR. LASKA:**  And I -- With that, I think I'll turn it

25  over to counsel here, unless the Court has any other questions.

1          **THE COURT:**  I don't have at this time, counsel.  Thank

2    you.

3          **MR. LASKA:**  Thank you, Your Honor.

4          **MR. SIEGEL:**  Good morning again, Your Honor.

5          **THE COURT:**  Morning.

6          **MR. SIEGEL:**  It seems to me that it's appropriate to

7    start with your first question, which goes to the heart of the

8    dispute before you.

9          We believe that the appropriate way to read Davila -- or

10   Davea (phonetic) -- and Cleghorn is set forth in the Ninth

11   Circuit's decision Marin General, which we've cited to the

12   Court in our papers, which extensively discusses those two

13   cases and clarifies the preemptive reach in the Ninth Circuit

14   of ERISA.

15         And I think that what Marin General says, which is

16   consistent -- And I'll come back to Davila.  I don't want to

17   turn from the case you asked about just to another one.  But I

18   think Marin General ably discusses those two cases and affirms

19   them.  The Court affirms the Superior Court and also affirms

20   Cleghorn while noting that some of its cases have been -- the

21   Ninth Circuit's cases have been less than clear.

22         And as the Court I'm sure is aware, there is a distinction

23   between the preemptive reach of Section 502 of ERISA and

24   Section 514.  502 provides for complete preemption and

25   Section 514 preserves state laws that touch upon ERISA-governed

1   health plans but allows those claims to go forward unless they

2   conflict with the purposes of ERISA and the terms of the plan.

3       And we think that -- And that is consistent with the

4   language in Davila that says, in order to meet the claims for

5   502 preemption, the claim must have been able to have been

6   brought under the terms of the plan, and it must rely on no

7   other independent legal duty.  And Cleghorn affirms that as

8   well.

9       And I would point out to you that, in both Davila and

10  Cleghorn, the -- basically the claims are indeed for benefits

11  under the terms of the plan.

12      In Davila, the claim is, essentially, the health insurance

13  plan should have approved a hospital stay they didn't approve,

14  and also that it didn't approve certain medications that it

15  should have approved under the terms of the plan.

16      Similarly, in Cleghorn, the claim is for emergency

17  services which the plaintiff believes are provided for in the

18  plan and the insurance company -- or the healthcare provider

19  did not provide.

20      So both of those are clearly claims that seek to explore

21  the reach of the plan and the terms of the plan and the

22  benefits which are available in the plan and we don't think

23  they involve independent legal duties.

24      I note that, for example, even -- even in Marin General,

25  all the claims are essentially contract-based claims which are,

PROCEEDINGS

1    I think, naturally under the law.  The plan is the contract.

2         And we believe that that -- That's why we believe the

3    first two claims, we concede, are preempted because they are

4    contract-based claims.

5         However, under the second prong of Davila, as affirmed in

6    Cleghorn, as affirmed in Marin General, we don't think the

7    Knox-Keene Act or the Unruh Act are, in fact, terms of the plan

8    but are independent legal duties imposed by California State

9    law.

10        Now, the question becomes, then, are they nonetheless

11   preempted?  I -- We would believe that the appropriate analysis

12   would be under Section 514, conflict preemption.

13        Are those independent State law obligations nonetheless in

14   conflict with ERISA regulations so as to be preempted?

15        Now, that's not even argued in the papers before you.

16        **THE COURT:**  What do you rely upon for that particular

17   interpretation?  What case law that -- supports that argument?

18        **MR. SIEGEL:**  Well, actually, one case that I just

19   looked at this morning, which is in defendant's papers, is

20   WellPoint.  And the defendants claim that WellPoint, which is

21   a -- within the Ninth Circuit -- it's a District Court case --

22   stands for the proposition that an unfair competition claim is

23   preempted by ERISA.

24        Actually, WellPoint doesn't say that.  WellPoint finds

25   that the unfair competition claim is preempted only because the

1   particular plaintiff didn't have standing to bring the claim.

2       So we don't think -- We think WellPoint shows that, in

3   fact, Federal Courts look at unfair competition claims.

4       Now, what we would argue, Your Honor, is, if the reading

5   of the defendants is accurate, then really there is no meaning

6   to 514 because essentially -- essentially anyone in an

7   ERISA-governed claim who brings any claim is starting from the

8   point that there is -- where they get their health insurance.

9   They get their healthy insurance from this plan and it's an

10  ERISA-governed plan, which Miss Mortensen's plan undoubtedly

11  is.  And if 502 is to be read as preempting any claim, then 514

12  is meaningless.

13      So we think that there's no question that -- California

14  legislature and the governor have passed these independent

15  laws, and there's no logical reason why, for example, a

16  conflict with ERISA that a health insurance plan's on the

17  private market or through the exchange subject to duties to

18  provide mental health services or not to discriminate against

19  people with disabilities, but plans that are given by employers

20  should be -- should -- should not have such claims brought

21  against them.

22      So we think that an independent legal duty is -- is as I

23  said.  And I think the WellPoint case does a good job because

24  it goes through all sorts of legal independent duties and

25  analyzes them.

PROCEEDINGS

1        Now, ultimately -- To be candid, I don't want to mislead

2   the Court.  WellPoint ultimately dismisses the plaintiff's

3   claims but not on the ERISA preemption but on the requirements

4   to meet those claims.  So we think that the WellPoint case

5   shows that, in fact, there are these independent State law

6   duties.

7        I mean, there's no doubt that Knox-Keene and Unruh are

8   independent State laws, and we don't think that the meaning of

9   502 is to preempt every single independent State law.  We think

10  it's -- It only -- It preempts claims under State law that

11  are -- are actions under the terms of the plan for benefits

12  under the plan.  And so that's -- That's -- That's our view of

13  your question.  And we don't think it's in conflict with Davila

14  or Cleghorn.

15       And, as I say, there's nothing in the papers that suggests

16  that we're looking at 514 conflict preemption, and so -- which

17  I think would be the right analysis.

18       We didn't respond to that because it's not in their moving

19  papers, but that would be the right analysis, in our view, as

20  to whether or not these claims can go forward.

21       And it's not raised by the defendants, and we think that,

22  were we to brief it, we would be able to persuade the Court

23  that there's no conflict with ERISA.

24       So that's our view of the question.  Hopefully, that's

25  been clear enough.

1       In terms of your second question on the -- whether we

2   were -- we would restate the contract -- the claims as ERISA

3   claims.

4       We would not restate the first -- We would definitively

5   not restate the first two claims as ERISA claims.  We -- We

6   chose not to bring them on that basis.

7       I think we would want to -- Candidly, I can't give you an

8   answer today on the third and fourth claims, whether we would

9   try to shoehorn them into an ERISA claim.  We hadn't really

10  thought about that because our view was they're not preempted.

11      I would tend to think we wouldn't, but we would certainly

12  want some time to consider that on the third and fourth claims.

13  On the first two, we would not try to restate them as ERISA

14  claims.  We agree they're preempted.  We had not sought leave

15  to amend the claim to state them and we don't seek leave to

16  state them.

17      In terms of the Unruh Civil Rights Act, which is the claim

18  that was in that Arce case that we cited to you on abstention,

19  we -- we address this at Page 15 of our brief.

20      But we -- we allege the plaintiffs are denied their --

21  their benefits as people with severe mental health conditions

22  in -- in Paragraph 53.  We think that is sufficient to show

23  what the class is.

24      We think were the Court --

25          THE COURT:  I mean, do you think that it -- it's

1    sufficient to state an Unruh claim?

2         **MR. SIEGEL:**  Well, we do, because -- We do, but we

3    also could amend this.  This can be amended, Your Honor, if

4    that -- if that isn't sufficient in the Court's view under the

5    broad notice provisions of pleadings in the Federal Rules.

6         We think it is sufficient because the law is clear that

7    it -- the definition of a disability under Unruh is the same as

8    under the California Fair Employment & Housing Act.  And we

9    think this meets the definition, which is a person with a -- a

10   life -- an inhibition on a life activity for mental health

11   reasons.

12        Now, we could say that more clearly if the Court believes

13   we should.  That's not -- We believe we should be given leave

14   to amend if the Court finds it inadequate, but we do -- Our

15   position is that we think it states it clearly enough, and we

16   certainly think we could clarify.

17        In terms of . . . whether you should maintain jurisdiction

18   over this case.  Our view would be that if you dismissed all of

19   Ms. Mortensen's claims, you should not maintain jurisdiction

20   because, while certainly we would concede that you could if --

21   if the Court thought it appropriate, we're very early in the

22   case and we've hardly moved along at all, so we don't think

23   there's any great deficiencies.

24        And I would be clear that the plaintiffs have no objection

25   to this Court's jurisdiction from the point of view of the

PROCEEDINGS

1   Court.  We just think that if you have a case that is purely

2   State law claims with no independent Federal Court jurisdiction

3   basis, it seems to us that it's more appropriately litigated in

4   the state's courts where we filed.

5       So our view would be that, yes, you could maintain

6   jurisdiction, but we would suggest it would be more appropriate

7   to remand the case to the State Courts.  That would be our

8   position.

9       And that, frankly, is true either way, because if you find

10  the first two claims preempted and the four are independent

11  State claims, again, that doesn't give you jurisdiction.

12      So wherever you come out on the preemption claim,

13  whether -- whether you are going to find all four claims in

14  Ms. Mortensen preempted, you're either going to find that or

15  find that the first two are preempted and the other two are

16  State Court claims so, either way, it's not going to change the

17  jurisdictional question.

18          **THE COURT:**  I don't believe you've answered four.

19          **MR. SIEGEL:**  Thank you, Your Honor.  This goes to why

20  we think there are independent claims.

21      But we don't allege that health plan contracts have

22  provisions which explicitly state that they would comply

23  with . . . the Knox-Keene Act or the Unruh Act.  They have

24  provisions -- We -- The sole basis for those contract claims

25  and, frankly, why we don't seek to preserve them in the

PROCEEDINGS

```
 1   Mortensen case, is, we do think there's an implied at-law duty
 2   to . . . to comply with the law.  And those -- That's the basis
 3   for that argument, Your Honor.
 4        It's set forth in our briefs at Page 17 and it's set
 5   forth -- It's alleged in our First Amended Complaint,
 6   Paragraphs 59 and 66.
 7        But we think the provisions are implied at-law duties,
 8   apply to California law, and they're not independent --
 9   independently set forth in those claims.
10        And this, I -- Let me take this back to the question of
11   preemption, is, is that I think another reason why the Court
12   should look at this 502 versus 514 issue.
13        Because if you think about it, for example, in labor
14   agreements, the -- the contract -- the labor contract might
15   have certain terms that you can only be fired for just cause.
16   It does not preempt a discrimination claim under State or
17   Federal law.  There's -- There's -- The courts have always said
18   that those are independent claims.
19        Even if an employee, for example, is fired for just cause
20   under the labor agreement, they might still have an independent
21   State law claim or Federal law claim on discrimination
22   provisions.  So --
23            THE COURT:  Just floating out there, that the Court
24   can dig in and find it?  Or does it have to be pled or . . .
25            MR. SIEGEL:  Well, I think it has to be pled, I'm
```

PROCEEDINGS

1    sure.  I don't think the Court should -- But we did plead the

2    third and fourth claims under the independent state laws.

3    That's what I'm suggesting.  I'm not suggesting --

4              **THE COURT:**  As a contract breach.

5              **MR. SIEGEL:**  Well, we think California law supports

6    the provision that all contracts have to be read consistent

7    with the law.

8         And I would say -- Though I guess what I'm saying is, if

9    the Court finds it's not -- it's not possible to read the

10   contracts as incorporating the law, then there really isn't a

11   basis at all for preemption of -- of the independent claims.

12   Then you're certainly not proceeding under the terms of the

13   plan, would be our view of it.

14        But our view is that the Court has to read all contracts

15   in accordance with the law, and certainly that's how we've pled

16   it in this case, that these are implied at-law provisions.

17        I'm sorry.  I don't mean to be flowing out.

18        So that -- That's what I can say on that point.  I don't

19   know what else to say.

20        On abstention, I -- Let me just say this.  I am going to

21   trial in a month before Judge Alsup on a case that he abstained

22   about that was before the National Labor Relations Board in

23   2009.  And it turned out that, after enormous legal proceedings

24   that took five years, and now we're trying the case.  I simply

25   say that as a -- to address the abstention argument.

1    I don't believe the Court can rely on any date when it

2    will get definitive judgment from the DMHC proceedings, for two

3    reasons:

4        One is, the proceedings are not the claims of these

5    plaintiffs, and they are not on all fours -- they're certainly

6    not on all fours with the Unruh -- There's nothing that would

7    relate to the Unruh Act in the claims before the DMHC.

8        As counsel, you know, candidly conceded, any

9    administrative proceeding can be appealed to both the Court of

10   Appeal and the Supreme Court of California, so we're talking

11   about an unknown amount of time.  It could take years.  And it

12   is not at all guaranteed that it will resolve the claims that

13   are in this lawsuit.

14       So the Court may sit back -- And that's what happened in

15   my case before Judge Alsup.  At the end of the day, after

16   waiting for years for the National Labor Relations Board to

17   act -- and it was a fair judgment of Judge Alsup, that they

18   might resolve the claims -- turns out they didn't.  And it

19   turns out, in fact, they carved our claims out.  And so we

20   waited five years and now we're going to trial.

21       I simply say that -- tell you that story to say there's no

22   real way the Court can seriously estimate when it would get

23   definitive guidance from the DMHC or whether the guidance would

24   be dispositive in this matter.  So we don't think the Court

25   should abstain.

PROCEEDINGS

1          **THE COURT:**  Okay.

2          **MR. SIEGEL:**  I don't know if the Court has other

3     questions.  I've tried to address the questions.

4          **THE COURT:**  Okay.  I don't have any questions at this

5     time.

6          **MR. SIEGEL:**  Thank you.

7          **THE COURT:**  Thank you, counsel.

8     You want to respond?

9          **MR. LASKA:**  I will respond briefly, Your Honor.  Thank

10    you.

11         Regarding preemption, I believe it was Cleghorn that noted

12    that ERISA has a powerful preemptive force under two separate

13    preemption prongs.  Section 502 is the one at issue in this

14    case.  There are two independent grounds for preemption.

15         And I would say counsel suggested that Cleghorn and Davila

16    are distinguishable because those cases involved claims under

17    the plans.

18         And as we've, I think, demonstrated in our papers, Your

19    Honor, that's true here as well with the UCL claims that the

20    Unruh Act claims.  At their heart, they are claims for benefits

21    under the plans to be provided in a certain way as required by

22    law.  In fact, we say this in our reply brief.

23         But just in rebuttal, if the Court looks at Section 56 --

24    I'm sorry -- Paragraph 56 of the First Amended Complaint, it

25    states right there in connection with their prayer for

1   attorneys' fees under the Unruh Act that the plaintiffs were

2   forced to incur -- and I'm doing this from memory, I'm not

3   reading -- but plaintiffs were forced to incur attorneys' fees

4   to obtain the benefits due to them under the plan.  That is

5   classic preemption under Section 502.

6        As for the notion of the independent legal duty, Your

7   Honor, I would direct the Court to the Sarkisyan case which we

8   cite in our papers.  And that's an example of -- of a court

9   distinguishing between an independent legal duty and -- and

10  claims that are preempted under ERISA.

11       In that case, briefly, the plaintiff was -- I believe in

12  that case it was a CIGNA plan and the plaintiff had brought

13  claims seeking benefits in a certain manner under the plan and

14  also had a separate claim for intentional infliction of

15  emotional distress based on the activities of the defendant

16  during a visit to CIGNA's headquarters.  Not to receive service

17  but to the headquarters.

18       And in that case, the Court found all of the claims

19  preempted but said -- but essentially left the intentional

20  infliction of emotional distress claim for another day, saying

21  that that was a separate independent legal duty because it

22  didn't involve attempting to get benefits under the plan.  It

23  wasn't a claim that could have been brought under ERISA.

24       Again, Your Honor, another example is bad faith.  The duty

25  to act in good faith under a contract is also an independent

PROCEEDINGS

1   legal duty that exists in the law, and that exists under all

2   contracts, all ERISA-governed or not.

3         But, again, the plaintiffs here concede that the bad-faith

4   claim is preempted, and that's the same rationale that applies

5   to the UCL claim and the Unruh claim.

6         That's all that I have to say on the preemption issue.

7         Counsel suggested that they hadn't thought about whether

8   they would seek to restate those two claims under the UCL and

9   under the Unruh Act as ERISA claims.

10        I would suggest, first of all, they can't do that.  That's

11  the point of preemption.

12        And the second is, if they had some way that they could

13  have amended the complaint, I believe it was their burden to at

14  least articulate to the Court in their opposition how they

15  would do that, and they haven't done that.  And even here at

16  hearing, they're not prepared to offer the Court any

17  explanation as to how they could.

18        We believe that those claims, again, should be dismissed

19  without leave to amend.

20        Regarding the sufficiency of the allegations under the

21  Unruh Act claim.  I -- I think the Court seems to -- My

22  impression is that the Court understands the arguments in our

23  papers.

24        **THE COURT:**  Um-hmm.

25        **MR. LASKA:**  I didn't hear anything that changes the

1   allegations in the papers, so unless the Court has questions

2   about that, I'll -- I'll -- I think that's about all that I

3   have to say about that.

4       As to the contract claims, the plaintiffs are now taking

5   what looked like breach of written contract in the -- in the --

6   I'm sorry -- the First Amended Complaint and are now suggesting

7   it's really a claim for a breach of implied at-law contract.

8   And that is significant for two reasons.

9       The first is that to the extent that it's a claim for

10  implied at-law contract, it's entirely duplicative of the other

11  causes of action.

12      And, second, if indeed it's a claim for breach of implied

13  at-law contract, setting aside whether that claim could stand,

14  as a matter of law, there cannot be bad faith because there is

15  no implied covenant of good faith and fair dealing in an

16  implied at-law contract.  You can't have an implied duty in an

17  implied contract.

18      We cite those cases in our reply brief.

19      And, finally, the last point I want to make, Your Honor,

20  is:  On the abstention point, counsel argued that, in this

21  case, the remedies being sought in the administrative action

22  are not identical to the remedies being sought in this case.

23      Well, first of all, to the extent that the parties are

24  seeking injunctive relief, they are absolutely identical.  It

25  is true that the plaintiffs in this case are seeking

1    restitution, but under the PacBell case, which is also cited in

2    our papers, under the abstention and primary jurisdiction

3    doctrines, the remedies sought need not be identical.  It's

4    simply enough to -- for the sake of judicial efficiency.

5         Unless the Court has any questions, Your Honor,

6    that's . . .

7              THE COURT:  Okay.  I don't, counsel.  Thank you.

8              MR. LASKA:  Thank you, Your Honor.

9              THE COURT:  We're finished.

10             MR. SIEGEL:  Hmm?  We're finished?

11             THE COURT:  Isn't that the way it works?

12             MR. SIEGEL:  I just want --

13             THE COURT:  They speak.

14             MR. SIEGEL:  Okay.

15             THE COURT:  You get your full say.  They speak and

16   it's over.

17             MR. SIEGEL:  Okay.  I did want to address one thing he

18   said but that's all right.

19             THE COURT:  Okay.

20             MR. SIEGEL:  Thank you, Your Honor.

21             THE COURT:  The matter's submitted, counsel.  Thank

22   you.

23             MR. LASKA:  Thank you, Your Honor.

24                  (Court adjourned at 10:43 a.m.)

25

<u>**CERTIFICATE OF REPORTER**</u>

I, CANDACE YOUNT, Contract Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C-13-5416-TEH, Susan Futterman, Megan Mortensen, and Acianita Lucero as individuals, individually and on behalf of all others similarly situated vs. Kaiser Foundation Health Plan, Inc., and Does I through XX, inclusive, were reported by me, a Certified Shorthand Reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Candace Yount, CSR No. 2737, RMR, CCRR
Contract Court Reporter for the U.S. District Court

Saturday, February 22, 2014