UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN FUTTERMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>  Defendant. | Case No. 13-cv-05416-TEH<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |

This matter came before the Court on February 10, 2014, on Defendant's motion to dismiss. Having considered the arguments of the parties and the papers submitted, the Court now GRANTS IN PART Defendant's motion for the reasons set forth below.

**BACKGROUND**

On October 2, 2013, Plaintiffs Susan Futterman, Megan Mortenson, and Acianita Lucero (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, sued Defendant Kaiser Foundation Health Plan ("Kaiser") in California Superior Court, Alameda County, for failing to provide them with adequate and timely access to mental health services. On October 16, 2013, Plaintiffs filed a First Amended Complaint ("FAC") alleging the following:

Futterman is the surviving spouse of Frederic Paroutaud ("Paroutaud"), who was a Kaiser member when he was diagnosed with bipolar disorder. FAC ¶ 31. Paroutaud and Futterman made multiple requests for one-on-one therapy for Paroutaud but were told that

Kaiser did not provide such therapy. *Id.* After Paraoutaud rejected the group therapy and medications he had been prescribed, Futterman called Kaiser to express her concerns, but she was told that the psychiatrist was on vacation and nothing could be done. FAC ¶ 32. Soon after, Paroutaud committed suicide. FAC ¶ 33.

Mortenson, also a Kaiser member, contacted Kaiser to request an appointment with a therapist after her brother committed suicide. FAC ¶ 34. She was told she would have to wait six weeks, and when she finally saw a therapist, she was referred to a psychiatrist for medication. *Id.* After disagreeing with the psychiatrist about the medication, Mortenson requested an appointment with a different psychiatrist and was told the next available appointment was not for another two months. FAC ¶ 35. Instead of waiting for that appointment, Mortenson obtained care from outside Kaiser for a period of time. *Id.* Finding that too expensive, however, she called Kaiser again to request an appointment and was told she would receive a call back. *Id.* After six days with no return call, Mortenson called Kaiser again and was told the next available appointment was more than one month away. *Id.* Mortenson did some research and notified Kaiser's member services that it was in violation of California law, which demands timely access to mental health services. FAC ¶¶ 36, 37. They gave her an appointment less than two weeks out – but it was 25 miles from her home. FAC ¶ 37.

Lucero was a Kaiser member when she experienced an emotional crisis and urgently sought mental health services. FAC ¶ 38. She called and e-mailed several doctors and divisions within Kaiser. *Id.* She was not seen within 48 hours – as she alleges California's timely access law demands for urgent care – but many days after. *Id.*

Based on the above, Plaintiffs allege that Kaiser failed to monitor capacity and ensure that members are offered timely mental health appointments, failed to provide accurate information regarding the availability of mental health services, and dissuaded and denied members from pursuing mental health services. The FAC alleges the following four causes of action: (1) violation of California's Unfair Competition Law, California

Business & Professions Code Section 17200 *et seq.*, (the "UCL claim"); [1] (2) violation of California's Unruh Civil Rights Act, California Civil Code Section 51, by discriminating against members with mental health conditions (the "Unruh claim"); (3) breach of covenant of good faith and fair dealing; and (4) breach of contract.

On November 21, 2013, Kaiser removed the action to federal court, asserting that Mortenson's particular health plan was governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, that her claims were completely preempted by ERISA, and that therefore the suit was eligible for removal under ERISA's preemption provisions. Kaiser now moves to dismiss all of the Plaintiffs' claims on the ground that the Court should abstain from the action as there is already a pending administrative agency action against Kaiser regarding the same issues. Kaiser also argues that Plaintiffs' pleadings are insufficient, specifically: (1) that Mortenson's claims are preempted by ERISA; (2) that Futterman's claims arise under a policy issued by a separate Kaiser entity, not the Defendant here; (3) that Plaintiffs are not in a protected class such that Unruh Act would apply; and (4) that Plaintiffs fail to reference any portions of contracts that were breached to support their breach of contract and breach of good faith claims. To the extent that any claims survive, Kaiser also seeks to strike Plaintiffs' class allegations, arguing that the putative class fails to meet the requirements of Federal Rules of Civil Procedure Rule 23, which governs class actions.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ.

---

[1] A UCL claim must be premised on a violation of a separate law or regulation. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Plaintiffs' claims are premised on Kaiser's alleged violations of the Knox-Keene Health Care Services Act of 1975, California Health & Safety Code Section 1340 *et seq.*, which requires health plans to treat certain mental health conditions; and with Title 28, California Code of Regulations, Sections 1300.67.2.2, 1300.67(f)(8), 1300.70(a)(3) which require health plans to provide timely access to mental health services, to provide accurate information, and to have adequate systems to monitor the provision of services, respectively.

P. 12(b)(6).  In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

**DISCUSSION**

The Court first considers Kaiser's argument that Mortenson's claims are completely preempted by ERISA, which the parties agree governs Mortenson's health plan.[2]  Congress intended ERISA section 502(a), codified at 29 U.S.C. § 1132(a), to be a "comprehensive scheme of civil remedies to enforce ERISA's provisions."  *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005).  Any state law cause of action that provides an alternative remedy to section 502(a) conflicts with the intended exclusivity of ERISA's remedial scheme, and is therefore completely preempted.  *Id.*  To determine whether a state law claim provides a conflicting alternative and is therefore completely preempted, courts must consider the claim's statutory basis and its factual underpinnings, and the ERISA plan document itself.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004).  Specific to health plans, "if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state

---

[2] Kaiser does not argue that Paroutaud's and Lucero's plans are governed by ERISA but reserves the right to do so should facts later show otherwise.

4

or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B)" and is completely preempted. *Id*. at 210 (internal quotation marks omitted).

Here, Plaintiffs concede that Mortenson's breach of contract and breach of good faith and fair dealing claims are completely preempted by ERISA and should be dismissed. The Court's analysis therefore focuses only on Mortensen's UCL and Unruh claims. Mortensen contends that these claims are not preempted because Kaiser had an independent legal duty to provide her requested mental health treatment. However, the laws and regulations underlying her UCL claim do not create an independent duty to provide *everyone* with mental health services, but require only that *health plans* provide *their enrollees* with adequate and timely mental health services.[3] *Cf. Cleghorn*, 408 F.3d at 1226 (finding plaintiff's UCL claim, based on defendant Blue Shield's alleged violation of a California statute regarding reimbursement of reasonable emergency expenses by health plans, to be completely preempted because "[a]ny duty or liability that Blue Shield had to reimburse him would exist here only because of Blue Shield's administration of ERISA-regulated benefit plans" (internal quotation marks, citation, and alteration omitted)). Similarly, the Unruh Act does not guarantee mental health coverage to all, but

---

[3] *See* Cal. Health & Safety Code § 1374.72 ("Every health care service plan contract . . . that provides hospital, medical, or surgical coverage shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age, and of serious emotional disturbances of a child, as specified [below] under the same terms and conditions applied to other medical conditions as specified [below]"); Cal. Code Regs. tit. 28, § 1300.67 ("The basic health care services required to be provided by a health care service plan to its enrollees shall include, where medically necessary, subject to any copayment, deductible, or limitation of which the Director may approve . . . effective health education services, including information regarding personal health behavior and health care, and recommendations regarding the optimal use of health care services provided by the plan or health care organizations affiliated with the plan."); Cal. Code Regs. tit. 28, § 1300.67.2.2 (setting timely access standards for "[a]ll health care service plans that provide or arrange for the provision of hospital or physician services, including specialized mental health plans that provide physician or hospital services, or that provide mental health services pursuant to a contract with a full service plan . . ."); and Cal. Code Regs. tit. 28, § 1300.70 ("A plan's QA program must address service elements, including accessibility, availability, and continuity of care. A plan's QA program must also monitor whether the provision and utilization of services meets professionally recognized standards of practice.").

1  merely requires that any coverage that is provided must not be distributed in a
2  discriminatory manner.[4]  Consequently, rather than being based on any independent state
3  or federal legal duty, Mortenson's UCL and Unruh claims arise solely out of her
4  membership in an ERISA plan.  These claims are therefore completely preempted by
5  ERISA and must be dismissed.

6  As all of Mortenson's state law claims are preempted and dismissed, Plaintiffs must
7  now be given an opportunity to amend the complaint to assert claims under ERISA.  *See*
8  *Cleghorn*, 408 F.3d 1222, 1224-25 (9th Cir. 2005).  If Plaintiffs decline to plead any
9  ERISA claims, and they indicated at the hearing that they may not, then there will be no
10 remaining federal questions in this case, and the Court will be inclined to decline to
11 exercise supplemental jurisdiction over Plaintiffs' remaining state causes of action and
12 remand this case to state court.[5]  *Cf. id.* at 1224-25, 1227 (affirming district court's
13 dismissal of complaint where all claims were completely preempted by ERISA and
14 plaintiff declined to amend complaint to plead claims under ERISA).  Given the likelihood
15 of remand, and in the interests of judicial economy and comity, the Court reserves decision
16 on Kaiser's remaining arguments pending Plaintiffs' possible amendment.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART, and Plaintiff Mortenson's claims are dismissed without prejudice.  Plaintiffs shall file a proposed amended complaint, or a statement that they will not amend the complaint to state any claims under ERISA, on or before **March 21, 2014**.  Should Plaintiffs propose an

---

[4] *See* Cal. Civ. Code § 51 ("All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.").

[5] Kaiser's removal was based solely on federal question jurisdiction based on ERISA preemption of Mortenson's state law claims.  Neither party contends that diversity jurisdiction exists in this case.

1 amended complaint, they may only propose amendments that include ERISA claims, and
2 must address their exhaustion of available internal review procedures, *see Vaught v.*
3 *Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (explaining
4 that although the ERISA statute does not explicitly require exhaustion of remedies before
5 filing suit, the Ninth Circuit long ago established that "federal courts have authority to
6 enforce [such an] exhaustion requirement in suits under ERISA, and that as a matter of
7 sound public policy they should usually do so" (internal quotation marks and citations
8 omitted)). The remainder of Kaiser's motion to dismiss remains under submission.

**IT IS SO ORDERED.**

Dated: 02/28/14

_____
THELTON E. HENDERSON
United States District Judge